# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| NATURAL POLYMER § <br> INTERNATIONAL CORPORATION § <br> § <br> v. § <br> § <br> THE HARTZ MOUNTAIN § <br> CORPORATION § | Civil Action No. 4:18-CV-00667 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant The Hartz Mountain Corporation's Motion for Summary Judgment (Dkt. #28). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted.

## BACKGROUND

On August 22, 2018, Plaintiff Natural Polymer International Corporation filed its Original Petition in the 366th Judicial District Court of Collin County, Texas (Dkt. #1–1). On September 21, 2018, Plaintiff removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332 (Dkt. #1).[1] Pursuant to the Court's Order and Advisory, Plaintiff filed an Amended Complaint on October 25, 2018 (Dkt. #4; Dkt. #6).

Plaintiff alleges in its Amended Complaint that it is a manufacturer of natural pet treats (Dkt. #6 ¶ 9). In 2016, Plaintiff claims it "entered into a business relationship with Defendant whereby (i) Defendant would seek certain products and services from [Plaintiff], (ii) [Plaintiff] would provide certain products and services, and (iii) Defendant would pay [Plaintiff] for the products and services provided." (Dkt. #6 ¶ 10). The products and services referred to by Plaintiff

---

[1] Plaintiff is a Delaware corporation with its principal place of business in Plano, Texas (Dkt. #1 ¶ 4; Dkt. #1-1 ¶ 3). Defendant is a New Jersey corporation with its principal place of business in Secaucus, New Jersey (Dkt. #1 ¶ 3; Dkt. #1-1 ¶ 4).

includes: "(i) the sourcing of quality raw materials, (ii) the manufacture of pet treats, (iii) the sourcing of packaging materials, and (iv) the packaging and shipment of pet treats." (Dkt. #6 ¶ 11).

In April 2017, Plaintiff claims that Defendant requested "certain products and services" pursuant to the parties' business relationship (Dkt. #6 ¶ 18). To fulfil Defendant's requests, Plaintiff allegedly "incurred significant costs by acquiring quality raw materials and packaging materials to satisfy the requests made by Defendant . . ." (Dkt. #6 ¶ 19). After Plaintiff incurred these costs, Defendant canceled its requests in May of 2017 (Dkt. #6 ¶ 20).

Plaintiff alleges a breach-of-contract claim and, in the alternative, claims for promissory estoppel and quantum meruit against Defendant (Dkt. #6 ¶¶ 25–41). In addition to other requested damages, Plaintiff seeks to recover its attorney's fees and costs related to prosecuting this suit (Dkt. #6 at p. 7). On July 19, 2019, Defendant filed its Motion for Summary Judgment (Dkt. #28). Plaintiff filed a response in opposition to the motion on August 9, 2019 (Dkt. #30). Defendant filed a reply in support of the motion on August 16, 2019 (Dkt. #31).

Complicating matters, the parties disagree about what contract or contracts are relevant to Plaintiff's breach-of-contract claim. Plaintiff argues that three contracts exist between the parties and that there is a genuine issue of material fact concerning whether Defendant is liable for breach under all of them (Dkt. #30 at pp. 10–14). Plaintiff alleges that these three contracts are: (1) a November 2016 memorialization of an oral agreement ("Contract One"); (2) seven purchase orders that Defendant placed in April 2017 with identical terms and conditions attached ("Contract Two"); and (3) a "Master Supply Agreement" executed in August of 2017 ("Contract Three") (Dkt. #30 at pp. 10–14). But Defendant submits that only Contract Two governs the parties'

obligations in this litigation (Dkt. #28 at pp. 14–18). The Court outlines the essential contents from each of the three ostensible contracts below:

## I. Contract One

Contract One is a November 10, 2016, email sent from one of Plaintiff's employees to one of Defendant's employees (Dkt. #30–1 ¶ 5; Dkt. #30–2). The email purports to recap an earlier phone conversation between the parties. The relevant terms are as follows:

- [Defendant] requested certain raw materials that are not stock items for [Plaintiff].

- [Defendant] will be responsible for these materials, which will be identified by [Plaintiff], and will buy them if the project is canceled, if the materials go out of date, or if any materials are left after 12 months from the date of purchase.

(Dkt. #30–2).

## II. Contract Two

Contract Two consists of seven purchase orders placed by Defendant in April 2017 with identical terms and conditions attached (Dkt. #28 at p. 10; Dkt. #28, Exhibits 1–7). The purchase orders were signed by Defendant, and each order stated that it was "subject to the General Terms and Conditions set forth below and to any other master agreement which are [sic] incorporated herein as part of this contract" (Dkt. #28, Exhibits 1–7). Both parties agree that Contract Two contains a valid New Jersey choice-of-law clause (Dkt. #28 at p. 13; Dkt. #30 at p. 10). The relevant terms from the General Terms and Conditions attached to each purchase order are as follows:

1. **ACCEPTANCE:**

. . .

- Acceptance of this offer is limited to acceptance on the terms and conditions of this offer and on no other terms and conditions; provided that, this Order shall be subject to the terms and conditions of any Master Purchase Agreement that may be in place between [Defendant] and [Plaintiff] (hereinafter an "MSA").

- Fulfillment of any part of an Order, or any other conduct by [Plaintiff] which recognizes the existence of a contract pertaining to the subject matter of such Order, shall constitute acceptance by [Plaintiff] of such Order and all of the terms and conditions included or referenced herein, including any MSA (collectively, the "Contract Terms").

- [Defendant] objects to any terms proposed in [Plaintiff's] proposal, sales note, acknowledgment or other form of acceptance of [Defendant's] offer which add to, vary from, or conflict with the Contract Terms. Any such proposed terms shall be void and the Contract Terms constitute the complete and exclusive statement of the terms and conditions between [Plaintiff] and [Defendant].

. . .

- If an Order has been issued by [Defendant] in response to [Plaintiff's] offer and if any of the Contract Terms add to, vary from or conflict with any terms of [Plaintiff's] offer, then the issuance of the Order by [Defendant] shall constitute an acceptance of [Plaintiff's] offer subject to the express conditions that [Plaintiff] assents to the additional, different and conflicting Contract Terms and acknowledges that the Order and these Contracts Terms constitutes the entire agreement between [Plaintiff] and [Defendant] with respect to the subject matter hereof and the subject matter of [Plaintiff's] offer. [Plaintiff] shall be deemed to have so assented and acknowledged unless [Plaintiff] notifies [Defendant] to the contrary in a writing signed by [Plaintiff's] authorized representative within ten (10) working days of receipt of the Order.

. . .

**13. ORDER CANCELLATION:**

(a) [Defendant] may terminate all (or any portion) of this Order for its sole convenience at any time by written or electronic notice to [Plaintiff], which termination shall be effective upon receipt, or upon such other date as may be specified in such notice. Upon receipt, [Plaintiff] shall cease any further work in regards to such Order as specified in such notice. [Defendant] shall pay for any Products delivered and or services performed prior to the date that termination becomes effective . . .

. . .

**15. REMEDIES:**

. . .

(b) In no event will [Defendant] be liable to [Plaintiff] or any third party, in contract, tort or otherwise, for any loss of profits or business, or any special, incidental, indirect, exemplary, punitive or consequential damages, arising from or as a result of these contract terms, any order or any agreement

between the parties relating to the Products, services or deliverables [Plaintiff] provides, even if [Defendant] has been advised of the possibility of such damages.

(Dkt. #28, Exhibits 1–7).

### III.   Contract Three

Contract Three is a "Master Supply Agreement"[2] executed by the parties in August of 2017 (Dkt. #30 at p. 11; Dkt. #30–10). Contract Three also contains a New Jersey choice-of-law clause (Dkt. #30–10 ¶ 18). Contract Three has an initial term from "August 1, 2017 until July 31, 2020 . . ." (Dkt. #30–10 ¶¶ 11, 15).

Contract Three also contains the following provisions:

3. <u>Individual Purchase Orders</u>: . . . Purchase Orders are subject to cancellation by [Defendant] at any time for any reason up to the point of shipment of the Products subject to such Purchase Order; provided however that [Plaintiff] may request compensation from [Defendant] as a result of any such cancellation to the extent [Plaintiff] has produced Products or otherwise utilized raw materials in regards to such cancelled Purchase Order which Products or materials cannot be used for other business, which request will be discussed in good faith.

. . .

15. <u>Entire Agreement</u>: This Agreement supersedes all prior negotiations, communications, contracts and agreements relating to the subject matter of this Agreement.

(Dkt. #30–10 ¶ 3).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] Though the actual agreement is titled "Confidential Supply Agreement" (Dkt. #30–10), Plaintiff repeatedly refers to it as the "Master Supply Agreement" in its response (Dkt. #30 at pp. 11–12). This is consistent with how Plaintiff referred to the agreement throughout negotiations with Defendant (Dkt. #30–9).

law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment.

*In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Under both Texas and New Jersey law, the interpretation of an unambiguous contract is a question of law. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018); *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d 1272, 1276 (N.J. 2012).

## ANALYSIS

Defendant moved for summary judgment on Plaintiff's claims for breach of contract, promissory estoppel, and quantum meruit. On Plaintiff's breach-of-contract claim, Defendant argues that: (1) Contract Two is the only enforceable contract relevant to this litigation; (2) Defendant cancelled its order pursuant to Contract Two's explicit terms; and (3) Defendant cannot be liable for any of Plaintiff's claimed damages under Contract Two's explicit terms (Dkt. #28 at pp. 14–17; Dkt. #31 at pp. 3–5). The Court agrees with Defendant and finds that: (1) Contract Two is the only relevant contract to this dispute; (2) Contract Two allowed Defendant to cancel its orders at any time; and (3) Contract Two forecloses Plaintiff's claimed breach-of-contract damages as a matter of law. Accordingly, the Court grants summary judgment for Defendant on Plaintiff's breach-of-contract claim.

On Plaintiff's promissory estoppel and quantum meruit claims, Defendant argues that, as a matter of law, Plaintiff may not maintain these claims where an express contract governs the subject matter of this dispute (Dkt. #28 at p. 18). The Court agrees with Defendant and grants summary judgment for Defendant on Plaintiff's promissory estoppel and quantum meruit claims.

7

## I. Plaintiff's Breach-of-Contract Claim Fails as a Matter of Law

The essential elements of a breach-of-contract claim are: (1) the parties entered into a contract containing certain terms; (2) the plaintiff did what the contract required it to do; (3) the defendant did not do what the contract required it to do—the breach; and (4) the plaintiff was damaged as a result of defendant's breach.[3] It is the fourth element—that Plaintiff was damaged as a result of Defendant's breach—that Plaintiff cannot satisfy as a matter of law.

Regarding Plaintiff's claim for breach of contract, the Court finds that: (1) Contract Two is the only relevant contract to this dispute; (2) Contract Two allowed Defendant to cancel its orders at any time; and (3) Contract Two forecloses Plaintiff's claimed breach-of-contract damages as a matter of law.

### A. Contract Two is the Only Relevant Contract

The Court finds that Contract Two—the terms and conditions attached to the seven purchase orders—is the only relevant contract with regard to Plaintiff's breach-of-contract claim. Plaintiff does not challenge the validity or enforceability of Contract Two but posits that it is "the most unlikely" of the three contracts to apply to this dispute (Dkt. #30 at p. 12).[4] Plaintiff is mistaken. *Only* Contract Two applies to this dispute.

---

[3] These are the elements under both Texas and New Jersey law. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (citation omitted); *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (citation omitted).

[4] Defendant cited to N.J. STAT. § 12A:2-204 and N.J. STAT. § 12A:2-206A to demonstrate that Plaintiff accepted the offer made by Contract Two (Dkt. #28 at p. 15). Plaintiff never claimed in its response that Contract Two is unenforceable.

Plaintiff did make passing reference to the fact that it did not sign the purchase order forms included with Contract Two (Dkt. #30 at p. 5). However, the Court will not consider an issue that Plaintiff has not fully briefed. *See United States v. Volksen*, 766 F.2d 190, 193 (5th Cir. 1985) (per curiam); *Ragland v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:16-CV-722-L, 2017 WL 1196863, at *5 (N.D. Tex. Mar. 31, 2017) (stating that the court would not consider an issue not fully briefed by a party). And of course, the fact that a seller of goods—here, Plaintiff—did not sign a contract is insufficient on its own to render a contract unenforceable. *See Robinson v. PNC Bank*, No. CIV.A. 13-07818 SRC, 2014 WL 1716248, at *2 (D.N.J. Apr. 30, 2014) (applying the New Jersey U.C.C.).

Contract Three—what Plaintiff refers to as the "Master Supply Agreement"—plainly does not apply to Plaintiff's breach-of-contract claim. As Plaintiff alleges in its complaint, Plaintiff brought this lawsuit to "recover the costs incurred related to the Purchased Materials" (Dkt. #6 ¶ 24). Plaintiff defines the "Purchased Materials" as the "quality raw materials and packaging materials to satisfy the requests made by Defendant" in April of 2017 (Dkt. #6 ¶¶ 18–19). There is no dispute that in May of 2017, Defendant terminated its April 2017 orders (Dkt. #30 at p. 6). The parties executed Contract Three in August of 2017 (Dkt. #30 at p. 11; Dkt. #30–10). The initial term of Contract Three began on August 1, 2017.

Plaintiff argues that Contract Three applies because it "does not *include an exclusion* that prior purchase orders are *not* to be included under its terms" (Dkt. #30 at pp. 6–7) (emphasis added). Plaintiff twists well-settled principles of contract interpretation in making this argument. Contract terms are to be given their plain and ordinary meaning. *E.g.*, *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002). And the Court may not read into a contract words it does not contain. *E.g.*, *McBride v. Md. Cas. Co.*, 23 A.2d 596, 598 (N.J. 1942).[5] Contract Three was not effective until four months after Defendant placed its orders and three months after Defendant terminated its orders. Plaintiff's argument that Contract Three applies to this dispute because it does not include an *exclusion* that the prior—now terminated—orders are *not* included under its terms asks the Court to disregard the plain application of Contract Three's August 1, 2017, effective date. It also asks the Court to read into Contract Three a nonexistent clause reviving the terminated purchase orders but with significantly different terms than Contract Two

---

[5] The parties do not contest that Contract Three contains a valid New Jersey choice-of-law clause (Dkt. #28 at p. 13; Dkt. #30 at p. 10). The same contract-interpretation principles would apply under Texas law. *E.g.*, *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017); *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 373 (Tex. 2001) (citation omitted).

originally had.⁶ The Court declines to do either.⁷ Contract Three cannot apply to this dispute as a matter of law.

Plaintiff also argues that there is a genuine question of material fact as to whether Defendant breached Contract One (Dkt. #30 at pp. 10–11). Defendant appears to dispute whether Contract One qualifies as a valid and enforceable contract, and it treats Contract One as an impermissible oral modification of Contract Two (Dkt. #31 at p. 6). The Court assumes without deciding that Contract One is a valid and enforceable contract because, in any event, Contract One was superseded by the express terms of Contract Two.

Contract Two states:

[Defendant] objects to any terms proposed in [Plaintiff's] proposal, sales note, acknowledgment or other form of acceptance of [Defendant's] offer which add to, vary from, or conflict with the Contract Terms. Any such proposed terms shall be void and the Contract Terms constitute the complete and exclusive statement of the terms and conditions between [Plaintiff] and [Defendant].

(Dkt. #28, Exhibits 1–7 ¶ 1). "Contract Terms" means only the terms and conditions contained in the purchase orders and any Master Purchase Agreement that was in place between the parties (Dkt. #28, Exhibits 1–7 ¶ 1). Plaintiff never alleges that a Master Purchase Agreement existed at the time Contract Two was created. And despite its lengthy discussion and reliance on Contract One throughout its response, Plaintiff *never* alleges that Contract One was a "Master Purchase Agreement" that could be properly incorporated under the terms of Contract Two. In fact, Plaintiff

---

⁶ "It is fundamental that if a contract is to be revived, it must be reinstated in *exactly* the same terms as were present before it was voided." *Gillette v. Cashion*, 91 A.2d 421, 423 (N.J. App. Div. 1952) (emphasis added). By Plaintiff's own admission, Contract Three's terms are different—and more favorable to Plaintiff—than Contract Two's terms (Dkt. #30 at p. 12).

⁷ Plaintiff also argues that Contract Three applies to this dispute because it contains a merger clause and because it controls in the event of an inconstancy with any purchase order (Dkt. #30 at p. 7). For the reasons stated above and the reasons stated in the Defendant's reply (Dkt. #31 at p. 9), the Court rejects Plaintiff's additional attempts to apply Contract Three to this dispute.

10

repeatedly asserts that Contract *Three* represents the "Master Supply Agreement" between the parties (Dkt. #30 at pp. 6–7, 9, 11–12). Because Plaintiff failed to present any evidence that Contract One constituted a Master Purchase Agreement between the parties, Contract Two plainly voids any terms the parties agreed to in Contract One.

### B. Contract Two Allowed Defendant to Terminate Its Purchase Orders

Because Contract Two is the only contract that can apply to Plaintiff's breach-of-contract claim, the next question is whether Contract Two allowed Defendant to terminate its April 2017 orders. The plain terms of Contract Two allow Defendant to "terminate all (or any portion) of this Order for its sole convenience at any time . . ." (Dkt. #28, Exhibits 1–7). Plaintiff concedes that if Contract Two is the operable contract, Defendant "would be correct that [it] could terminate the Purchase Orders pursuant to those terms" (Dkt. #30 at p. 13). Accordingly, Defendant was within its rights under Contract Two to terminate the purchase orders.

### C. Contract Two Forecloses Plaintiff's Claimed Damages for Breach of Contract

Plaintiff argues that even if Contract Two applies to this dispute, there is a genuine question of material fact regarding whether Defendant owes it expectation and benefit-of-the-bargain damages[8] for failing to pay for services Plaintiff performed prior to Defendant's cancelation— namely, ordering the packaging and raw materials Plaintiff needed to fulfill Defendant's order of goods (Dkt. #30 at pp. 13–14). Plaintiff is mistaken—even if a genuine question of material fact exists regarding whether Defendant did not pay Plaintiff for services performed,[9] Plaintiff cannot recover expectation and benefit-of-the-bargain damages for those services as a matter of law.

---

[8] These are the only damages Plaintiff claims it is entitled to under the contract (Dkt. #30 at p. 5).

[9] Defendant disputes that Plaintiff could have performed any services since the purchase orders were for the sale of goods, not services (Dkt. #31 at pp. 3–4). The Court does not need to address this question because, as a matter of law, Plaintiff cannot recover any expectation or benefit-of-the-bargain damages for Defendant's alleged breach.

11

Contract Two's termination provision states that Defendant "shall pay for any Products delivered and or services performed prior to the date that termination becomes effective . . ." (Dkt. #28, Exhibits 1–7 ¶ 13). Plaintiff asserts that there is a genuine issue of material fact regarding whether Defendant breached Contract Two by not paying for "services performed" by Plaintiff upon Defendant's termination. Even if Plaintiff performed services under Contract Two as it claims, Plaintiff is not entitled to expectation or benefit-of-the-bargain damages for Defendant's breach.

Under its "remedies" section, Contract Two states:

> In no event will [Defendant] be liable to [Plaintiff] or any third party, in contract, tort or otherwise, for any *loss of profits* or business, or any special, incidental, indirect, exemplary, punitive or consequential damages, *arising from or as a result of* these contract terms, any order or any agreement between the parties relating to the Products, *services or deliverables [Plaintiff] provides*, even if [Defendant] has been advised of the possibility of such damages.

(Dkt. #28, Exhibits 1–7 ¶ 15) (emphasis added). Contract Two prevents Plaintiff from recovering "for any loss of profits or business . . . " (Dkt. #28, Exhibits 1–7 ¶ 15). "Expectation damages" is another moniker for loss of benefit of the bargain. *Coyle v. Englander's*, 488 A.2d 1083, 1084 (N.J. App. Div. 1985). And failure of a party to receive its benefit of the bargain—which is the "core concern of contract law"—is essentially the loss of profits. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986) (citation omitted).

Recovery for loss of profits is plainly foreclosed under Contract Two's terms. This includes any loss of profits "arising from . . . services or deliverables [Plaintiff] provides . . ." (Dkt. #28, Exhibits 1–7 ¶ 15). Thus, even if a genuine issue of material fact exists regarding whether Defendant breached Contract Two by not paying for "services performed" by Plaintiff, Defendant's breach did not cause damages to Plaintiff under Contract Two. Plaintiff cannot recover expectation and benefit-of-the-bargain damages for a breach under Contract Two as a

matter of law, which are the only damages Plaintiff attempts to recover here. Because Plaintiff cannot satisfy element four of its breach-of-contract claim—that it was damaged as a result of Defendant's breach—summary judgment for Defendant is appropriate.[10]

## II. Plaintiff's Promissory Estoppel and Quantum Meruit Claims Fail as a Matter of Law

As a threshold matter, Texas law applies to the question of whether Plaintiff's promissory estoppel and quantum meruit claims fail as a matter of law—the New Jersey choice-of-law clause contained in Contract Two does not govern these equitable claims. *See Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) ("Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it.").[11]

Plaintiff argues that it is allowed to plead promissory estoppel and quantum meruit as alternative theories of recovery to its breach-of-contract claim (Dkt. #30 at p. 14). Plaintiff is correct—it may *plead* promissory estoppel and quantum meruit as alternative theories of recovery. *See Methodist Hosp. v. Halat*, 415 S.W.3d 517, 522 (Tex. App.—Houston [1st Dist.] 2013, no pet.). But the question is no longer whether Plaintiff can plead alternative theories. The question is now—after determining that Contract Two applies to this dispute—whether Defendant is entitled to judgment as a matter of law on Plaintiff's quantum meruit and unjust enrichment claims. The Court finds that it is.

"For many years, Texas courts have held that promissory estoppel becomes available to a claimant only in the *absence* of a valid and enforceable contract." *Doctors Hosp. 1997, L.P. v. Sambuca Hous., L.P.*, 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2004, pet. abated)

---

[10] As Defendant notes, Plaintiff is a sophisticated, commercial entity (Dkt. #31 at p. 5). While Contract Two's terms seem remarkably unfavorable to Plaintiff, this is the contract Plaintiff agreed to. And as the Court discussed, Plaintiff—rather remarkably—did not challenge the validity or enforceability of Contract Two. *Supra* note 4, at 8. Nor did Plaintiff claim any terms were ambiguous. *See generally* (Dkt. #30).

[11] Plaintiff does not dispute that Texas law applies here.

(emphasis in original) (collecting cases). Although the existence of a promise *independent* of the contract can be used to sustain a promissory estoppel claim under Texas law, *Williams v. Colonial Bank, N.A.*, 199 F. App'x 399, 403 (5th Cir. 2006), Plaintiff does not claim that a promise independent of a contract exists here (Dkt. #30 at pp. 14–15). In fact, Plaintiff argues at every turn that it is entitled to breach of contract damages under Contract One, Contract Two, *and* Contract Three (Dkt. #30 at pp. 10–14). By Plaintiff's own admission, some valid, enforceable contract governs this dispute. As such, Plaintiff may not assert a promissory estoppel claim under Texas law.

Plaintiff's quantum meruit claim fails as a matter of law for the same reason. "Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Vortt Expl. Co.*, 787 S.W.2d at 944. Plaintiff presents no evidence that any exception to that general rule applies here (Dkt. #30 at pp. 14–15). Plaintiff simply asserts again that it is allowed to "plead" quantum meruit "to allow alternative recovery if the evidence at trial warrants it." (Dkt. #30 at p. 14). Plaintiff ignores the fact that whether an express contract covers the goods or services in dispute is a legal question. *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 737 (Tex. 2018). By Plaintiff's own admission, an express contract governs the goods at issue here (Dkt. #30 at pp. 10–14). Thus, Plaintiff's promissory estoppel and quantum meruit claims fail as a matter of law.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #28) is hereby **GRANTED**. Plaintiff's claims for breach of contract, promissory estoppel, and quantum meruit are **DISMISSED with prejudice**. Each party shall bear its own costs.

**SIGNED this 18th day of November, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE